**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

No. 1:16-CV-00168-EJM

American Health Foundation d/b/a Willow
Gardens Care Center, as authorized
representative of JD1 and JD2[1],

      Plaintiff,

vs.

Charles M. Palmer, in his official capacity
as the Director of the Iowa Department of
Human Services,

      Defendant.

_____

## PLAINTIFFS' PROPOSED FIRST AMENDED COMPLAINT

As a condition of receiving federal funds, the State of Iowa is required to operate the

Medicaid program in compliance with the Social Security Act and implementing regulations,

pursuant to 42 U.S.C. § 1396(c). This case concerns the failure of Defendant Charles M. Palmer

("Palmer"), the Director of the Iowa Department of Human Services ("IDHS"), to ensure that

Defendant complies with its obligation to consider the proper amount of income and resources

available to a resident in a long-term care facility in accordance with the constitution and the laws

of the United States. Defendant is directly responsible for policies necessary for the

---

[1] Federal law requires state agencies to permit applicants and beneficiaries to designate an
individual or organization to act responsibly on their behalf in assisting with the individual's
application and renewal of eligibility and other ongoing communications with the state agency
responsible for issuing determinations on Medicaid eligibility. *See* 42 C.F.R. § 435.923.

Case 1:16-cv-00168-LRR   Document 32   Filed 02/22/17   Page 1 of 16

implementation of a system for determination of patient share that complies, in all aspects, with federal law.

Defendant's failure to properly calculate a Medicaid recipient's available income violates the Federal Medicaid Act at 42 U.S.C. §§ 1396a (a)(17)(b), 1396a(a)(10)(A), 1396d(a)(4)(A), 1396a(a)(8); 20 C.F.R. § 416.1201(a)(1), 42 C.F.R. §435.930; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.,* and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*

## I. PARTIES

1.     Plaintiff American Health Foundation ("AHF") is nonprofit organization based out of Florida d/b/a Willow Gardens Care Center ("Willow Gardens" or "the facility"), which is a long-term nursing care facility incorporated in Iowa and located in [REDACTED] County, Iowa.

2.     Defendant Charles M. Palmer is the Director of the Iowa Department of Human Services ("IDHS"), which is the department of the State of Iowa that, under Iowa law and applicable federal regulations, was the single state agency charged with responsibility for administering and supervising Iowa's Medicaid program at the time the patient shares at issue here were determined. At all times material to this Complaint, Defendant Palmer acted under color of state law in administering the regulations, customs, policies, and practices material herein. He is sued in his official capacity only.

## II. JURISDICTION AND VENUE

3.     This action arises under the Title XIX of the Social Security Act, 42 U.S.C. § 1396a *et seq.* ("the Medicaid Act"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, 28 C.F.R. § 35.130, 42 CFR 435.725(e)(1), and the Supremacy Clause, U.S.

Const., Art. VI, cl. 2.

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

5.     Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

6.     Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 95.

### III. STATEMENT OF FACTS

7.     As part of its mission, AHF, which owns and manages Willow Gardens, is dedicated to avail medical, psychological, social, and educational resources to individuals with special healthcare needs lacking access to this care.

8.     John Doe No. 1 ("JD1") and John Doe No. 2 ("JD2") were former residents of Willow Gardens.[2]

9.     JD1 was admitted to the facility on or about [REDACTED], 2010 and again on or about [REDACTED], 2013.  JD2 was admitted on or about [REDACTED], 2011 and again on or about [REDACTED], 2013 before being discharged on or about [REDACTED], 2014.

10.     JD1 suffers from numerous medical conditions that required his twenty-four (24) hour care and assistance at Willow Gardens. JD2 also suffered from numerous medical condition that required his twenty-four (24) hour care and assistance at Willow Gardens.

11.     JD1 was insolvent and received Medicaid benefits to pay for his care and assistance at Willow Gardens. JD2 was insolvent during his stay at Willow Gardens and received Medicaid benefits to pay for his care and assistance there.

12.     Willow Gardens is an intended third party beneficiary of JD1 and JD2's Medicaid benefits, by and through Admission Agreements and Assignments, executed by

---

[2] Pursuant to the protective order filed on January 19, 2017 (Dkt. No. 24), the parties have agreed to use the pseudonyms John Doe No. 1 ("JD1") and John Doe No. 2 ("JD2") for the two former residents of Willow Gardens involved in this matter.

JD1 and JD2 or their representatives upon their admission to Willow Gardens.

13.    JD1's last patient share amount that he owed the facility for his care and assistance as determined by IDHS for 2014 was approximately $714.00 per month.

14.    JD1's monthly Social Security benefit is the sole basis of his patient share.

15.    JD1's monthly Social Security benefit was only approximately $571.00.

16.    JD1's had his Social Security benefits reduced each month by an approximately $143.00 garnishment, which was the total of two [REDACTED] state child support obligations.

17.    Despite this deduction in benefits, IDHS used JD1's pre-deduction Social Security benefit amount when calculating his patient share.

18.     However, JD1 did not receive his full Social Security benefit amount each month – he only received the amount which remains once his child support obligation had been satisfied.

19.    JD2's patient share amount that he owed the facility for his care and assistance prior to his discharge as determined by IDHS was approximately $1,370.00 per month.

20.    JD2's monthly Social Security benefit was the sole basis of his patient share.

21.    JD2's monthly Social Security benefit received was only approximately $1,018.30.

22.    JD2 had his Social Security benefits reduced each month by an approximately $351.70 garnishment, which was the total of three [REDACTED] state child support obligations.

23.    Despite this deduction in benefits, IDHS also used JD2's pre-deduction Social Security benefit amount when calculating his patient share.

24.    However, JD2 did not receive his full Social Security benefit amount each month – he only received the amount which remained once his child support obligation had been satisfied.

25.    On March 18, 2015 Corinne Schram ("Ms. Schram") with IDHS verbally denied a

4

request for income reduction for JD2.  Ms. Schram also denied a written request and subsequently provided the IDHS policy that relates to SSI income garnishments and withholdings as support for her decision.

26.    Ms. Schram's reliance on the IDHS policy on SSI income garnishments and withholdings referencing 20 C.F.R 416.1102, 416.1110, and 416.1123(b)(1) is improper because these provisions only relate to the calculation of SSI income, which is not at issue.

27.    First, JD1 and JD2 child support obligations should not be treated as available income when calculating their patient share pursuant to federal law.

28.    Pursuant to 42 U.S.C. § 1396a(a)(17)(B), state Medicaid plans shall only take into account income and resources that are available to the applicant or recipient.

29.    In the instant matter, JD1's and JD2's Social Security benefits were garnished automatically pursuant to a court order before any benefits were paid to them.  It is therefore incorrect to treat the entirety of their benefit amounts as available to them.  JD1 and JD2 never had access to or control over the approximately $143.00 and approximately $351.70, respectively, that was garnished from their benefits to meet their child support obligation each month.

30.    The Federal Medicaid Regulations regarding income are based on the SSI regulations. The SSI definition of income can be found at 42 U.S.C. 1382a. Section 2(E) of this code section states that support and alimony payments are included as "unearned" income.

31.    Federal case law also dictates that court ordered support payments are considered to be the unearned income of the payee, and cannot simultaneously be "available" to the payor. *See Dept. of Health and Human Srvcs. v.  Secretary of HHS,* 823 F.2d 323, 327 (9th Cir. 187) (holding that the state of California should treat court-ordered spousal and child support payments as unavailable to Medicaid recipients for purposes of Medicaid benefit eligibility

5

determinations);  *Martin v. Sullivan*, 932 F.2d 1273, 1277 (9th Cir. 1991); 42 U.S.C. § 1382a(a)(2)(E); 20 C.F.R. § 416.1121(b).

32.     In *Dept. of Health and Human Srvcs*, the 9th Circuit reasoned that, since income earmarked for dependents could not be used to reduce a person's entitlement to SSI cash assistance, income that a Medicaid recipient uses to pay court-ordered child support or alimony could not be used to reduce the recipient's Medicaid benefits. *Dept. of Health and Human Srvcs.* At 328.  Thus, these monies cannot be doubly counted as income for both the person receiving the benefit and the person paying the benefit. *Id.*

33.     In *Martin v. Sullivan*, the 9th Circuit also held that income that a Medicaid recipient uses to pay court-ordered child support or alimony <u>cannot</u> be used to reduce the recipient's Medicaid benefits.

34.     Federal law further defines the availability of a resource by its liquidity. 20 C.F.R. § 416.1201(a)(1). An applicant's resources are not available when he or she does not have the *power* to liquidate the asset. 20 C.F.R. § 416.1201(a)(1).

35.     Moreover, Medicaid is a cooperative program between the federal and state governments.  Pursuant to statutory authority under the Social Security Act, the Centers for Medicare & Medicaid Services ("CMS"), as the agency charged with promulgating the rules and regulations governing state Medicaid programs, issued a regulation requiring states to either use a projected monthly income to determine patient share or reduce the amount paid by an agency to an institution by the total amount of income an individual receives. *See* 42 CFR 435.725(e)(1).

36.     Iowa has limited Medicaid benefits availability by including child support obligation amounts in JD1 and JD2's patient share amounts owed to Willow Gardens even though those amounts were never received by JD1 and JD2. This limit is specific to Iowa and not

found in 42 CFR 435.725(e)(1).

37.    Pursuant to federal Medicaid regulations, if a state intends to impose limitations on eligible individuals' Medicaid benefits, such limitations must be approved by the Center for Medicare and Medicaid Services ("CMS"), the federal agency within the United States Department of Health and Human Services (HHS) that oversees state governments' administration of Medicaid.  In *Douglas v. Indep. Living Ctr. of S. Cal., Inc*., 132 S. Ct. 1204, 1205 (U.S. 2012), the court stated: "To qualify for federal funds, a State must submit its Medicaid plan and any amendments to the federal agency that administers the program, the Centers for Medicare & Medicaid Services ("CMS").  Before approving a plan or amendments, CMS conducts a review to determine whether they comply with federal requirements."

38.    CMS will only approve proposed state plans and amendments if they comply with federal statutory and regulatory requirements.

39.    CMS does not automatically approve states' proposed amendments to their Medicaid plans. In *Md. Dep't of Health & Mental Hygiene v. Ctrs. For Medicare & Medicaid Servs*., CMS rejected a proposed amendment to Maryland's state plan because its effect would be: "[T]o eliminate from its post-eligibility income calculation all deductions for uncovered medical expenses Medicaid nursing home residents incurred before becoming eligible for benefits."

40.    CMS rejected Maryland's proposed amendment because it would have unreasonably limited the post-eligibility deductions of incurred medical expenses. See *Md. Dep't of Health & Mental Hygiene* at 432.

41.    In the instant matter, IDHS denied JD1's and JD2's requests to have their patient shares reduced because they did not show that their unavailable garnished child support

obligations combined with all other income were lower than the patient share amounts IDHS had already set.

42. In order for IDHS to properly deny JD1's and JD2's requests to have their patient share reduced pursuant to the IDHS Medicaid Manual, Title 8, Chapter E, at page 22a, the basis for the denial must: 1) be articulated in Iowa's state Medicaid plan; and 2) be approved by CMS. *See* Douglas at 1205.

43. The basis for income calculation IDHS used is articulated in the state plan under Title 8, Chapter E of the IDHS Medicaid Manual. However, there is no indication in Iowa's Medicaid rules that: 1) Iowa has sought the approval of CMS to add this limiting provision; or that 2) CMS has approved this limiting provision as an exception to the requirement that income be available to be used as an Iowa Medicaid recipient's total income.

44. Similarly, Title 8, Chapter E of Iowa's Medicaid rules limits the post-eligibility deduction of a child support obligation by imposing a limiting calculation of total income that takes into account an individual's income that is not received by him or her that is not found in federal law. CMS must therefore approve the specific inclusion of child support obligations in the calculation of total income promulgated by IDHS before the limit can be applied to JD1 and JD2.

45. Iowa's limitation of Medicaid benefits by way of including child support obligations as available income, has not been approved by CMS via a state plan amendment ("SPA").

46. In the absence of CMS approval, Iowa's refusal to deduct from income garnished child support obligations is preempted by 42 CFR 435.725(e)(1).

47. Pursuant to the Supremacy Clause of the United States Constitution, federal law

preempts state law in areas of disagreement or conflict. Preemption arises where it would not be possible to comply with both federal and state laws at the same time, "or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress.'" Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 351 (2d Cir.2008) (quoting United States v. Locke, 529 U.S. 89, 109, 120 S. Ct. 1135, 1148, 146 L.Ed.2d 69, 89 (2000)). Federal courts have expressly held that, while Medicaid is a system of cooperative federalism, the same preemption analysis applies. Lankford v. Sherman, 451 F.3d 496, 510 (8th Cir. 2006) ("[O]nce the state voluntarily accepts the conditions imposed by Congress[,] the Supremacy Clause obliges it to comply with federal requirements"). See, e.g., Lewis v. Alexander, Case No. 2006-3963 (E.D. Pa. August 23, 2011) (holding that where a state Medicaid law conflicts with a federal Medicaid statute or regulation, the state law is unenforceable).

48.     Although states may create their own Medicaid plans and administer their own Medicaid programs, their Medicaid laws, rules, and programs may not contradict federal law. Therefore, Iowa is required to administer its Medicaid program in accordance with federal law, and IDHS's practice of determining a patient share amount that does not include a deduction of child support, alimony, or court ordered victim restitution obligations is preempted by federal law that requires state Medicaid plans to only take into account income and resources that are available to and received by the applicant or recipient.

49.     The aforementioned federal regulations, laws, and cases suggests the Iowa scheme to not deduct child support payments from the available income to determine patient liability is contrary to federal law. This failure to comply with federal Medicaid law by IDHS also constitutes unlawful discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132, and 28 C.F.R. § 35.130.

9

50.     Furthermore, IDHS's inclusion of child support obligations in JD1's and JD2's patient pay amounts has caused irreparable injury, by way of a substantial financial hardship to the facility, and has jeopardized the facility's ability to provide requisite medical care and assistance to other residents in the facility.

51.      JD1 and JD2 owe a substantial outstanding balance to Willow Gardens.

52.     Due to Defendant's failure to afford JD1 and JD2 Medicaid benefits within the confines of Federal law, both JD1 and JD2 are subject to legal actions to collect a debt owed.

53.     The burden placed on Defendant is only that it be required to comply with federal Medicaid laws; Defendant stands to suffer diminutive, if any, burden by the granting of the requested mandate of deducting child support from Medicaid applicants' or recipients' patient share amounts.

## IV. CAUSES OF ACTION
## COUNT ONE - DECLARATORY JUDGEMENT

54.     Paragraphs incorporate all paragraphs set out above as if fully set out herein.

55.     As is more fully set forth herein, an actual, genuine, subsisting and justiciable controversy exists between AHF and Defendant arising out of the Defendant's failure to comply with Federal law.

56.     On March 18, 2015, Schram verbally denied a request for income reduction for JD2. Ms. Schram also denied a written request and subsequently provided the IDHS policy that relates to SSI income garnishments and withholdings as support for her decision.

57.     Ms. Schram's reliance on the IDHS policy on SSI income garnishments and withholdings referencing 20 C.F.R. 416.1102, 416.1110, and 416.1123(b)(1) is improper because these provisions only relate to the calculation of SSI income, which is not at issue.

10

58.    JD1's and JD2's child support obligations should not be treated as available income when calculating their patient share pursuant to federal law. 42 U.S.C. § 1396(a)(17)(B) provides that state Medicaid plans shall only take into account income and resources that are available to the applicant or recipient.

59.    JD1's and JD2's Social Security benefits were garnished automatically pursuant to a court order before any benefits are paid tot hem.  It is therefore incorrect to treat the entirety of their benefit amounts as available to them.  JD1 and JD2 never had access to or control over the approximately $143.00 and $351.70, respectively, that is garnished from their benefits to meet their child support obligations each month.

60.    The Federal Medicaid Regulations regarding income are based on the SSI regulations. The SSI definition of income can be found at 42 U.S.C. § 1382a. Section 2(E) of this code states that support and alimony payments are included as "unearned" income.

61.    The Defendant has limited Plaintiffs' Medicaid benefits by including unavailable income, specifically child support obligations amounts, in JD1's and JD2's monthly patient share amounts owed to Willow Gardens. This limit is specific to Iowa and not found in 42 C.F.R. § 435.725(e)(1).

62.    Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, the Plaintiffs seek a declaration by this Court as to whether Defendant's failure to deduct child support, alimony, or court ordered victim restitution obligations violates JD1's and JD2's rights under the Medicaid Act, the Due Process clause of the Fourteenth Amendment to the United States Constitution, the Supremacy Clause of the United States Constitution, and the Americans with Disabilities Act.

63.    The Court's ruling hereunder shall make certain that which is uncertain and

secure that which is insecure.

## COUNT TWO - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE, AND NURSING FACILITY SERVICES MANDATE

64.     Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

65.     In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendant, while acting under the color of law, has failed to provide JD1 and JD2 with nursing facility services necessary for the health and welfare of the disabled Plaintiffs.

66.     The Defendant's violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT THREE - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

67.      Plaintiffs incorporates all paragraphs set out above as if fully set forth herein.

68.     Plaintiffs are Medicaid-eligible individuals who required nursing facility services and resided in Iowa.

69.     The Defendant is engaged in the repeated, ongoing failure to arrange and provide medical assistance and nursing facility services despite the fact that medical assistance and nursing facility services were medically necessary for Plaintiffs.

70.     In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendant, while acting under the color of law, failed to provide services to Plaintiffs with "…reasonable promptness…". Furthermore, the Defendant is required to administer the Medicaid program in compliance with 42 C.F.R. §435.930 (requiring applicants be afforded Medicaid benefits without any delay).

71.    The Defendant's violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT FOUR – VIOLATION OF THE "AMERICANS WITH DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

72.    Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

73.    The Defendant has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

74.    Plaintiffs are "qualified individual with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.* and 28 C.F.R. § 35.130 *et. seq.*

75.    The Defendant's failure to afford Plaintiffs public benefits and services, to which they were entitled under federal law, and failure to grant them Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 *et seq.*

76.    As a consequence of' Defendant's actions as described herein, Plaintiffs suffered damages, including compensatory, mental anguish, and other damages.

## COUNT FIVE – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

77.    Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

78.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. Public and federally-funded entities must provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." See 28 C.F.R §

13

41.51(d). Policies, practices, and procedures that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the Rehabilitation Act.

79. Defendant is a recipient of federal funds under the Rehabilitation Act. The Plaintiffs are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

80. The actions by Defendant constitute unlawful discrimination under 29 U.S.C. § 794(a), violate the mandate that no qualified handicapped person should be denied benefits on the basis of handicap, and violate the regulations implementing this statutory prohibition. 28 C.F.R. § 41.51(d).

81. Plaintiffs were individuals who required 24-hour skilled nursing services for their health, welfare, and survival. The Defendant's failure to grant payment of needed benefits to Plaintiffs violates § 504 of the Rehabilitation act of 1973 and its implementing regulations.

82. As a consequence of Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

## COUNT SIX – VIOLATION OF DUE PROCESS AND EQUAL PROTECTION (42 U.S.C. §1983)

83. Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

84. Equal protection doctrine ensures that all similarly situated persons are treated similarly under the law. If a statute classifies people, the classification must be based on criteria related to the statute's objective. *Disabled Am. Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992).

85. The above acts were committed under color of state law by the Defendant. Said acts were committed by the Defendant by and through representatives of the Defendant acting in their

Case 1:16-cv-00168-LRR   Document 32   Filed 02/22/17   Page 14 of 16

official capacities pursuant to the statutes, ordinances, laws and policies of the Defendant.

86.     The Defendant acted wilfully, knowingly, and purposefully with the specific intent to deprive Plaintiffs of their rights, privileges, or immunities secured by the Constitution and laws by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §1983.

87.     As a consequence of' the Defendant's actions as described herein, Plaintiffs suffered damages including compensatory, mental anguish, and other damages.

## COUNT SEVEN – TEMPORARY AND PERMANENT INJUNCTION

88.     Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

89.     The above acts were committed under color of state law by the Defendant. Said acts were committed by and through representatives of the Defendant acting in his official capacities pursuant to the statutes, ordinances, laws and policies of the Defendant.

90.     The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendant issue payment of their approved Medicaid benefits.

91.     Issue an Order requiring the Defendant to automatically issue payment of Plaintiffs' Medicaid benefits.

## V. REQUESTS FOR RELIEF

1.     Issue a Declaratory Judgment in favor of Plaintiffs, requiring Defendant to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

2.     Declare unlawful the Defendant's failure to arrange for medical assistance and nursing facility services to Plaintiffs;

3.     Issue Preliminary and Permanent Injunctive relief enjoining the Defendant from

15

subjecting Plaintiffs to practices that violate their rights under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

4. Issue Preliminary and Permanent Injunctive relief requiring the Defendant to arrange for medical assistance and nursing facility services to Plaintiffs;

5. Award Plaintiffs the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C. § 1988; and,

6. Award such other relief as the Court deems just and appropriate, including, but not limited to, compensatory and punitive damages, interest, expenses and costs.

s/ Katie Z. Van Lake
ARDC# 6292120
sb2, Inc.
1426 N. 3rd Street, Suite 200
Harrisburg, PA 17102
Telephone: (516) 509-1289
Facsimile: (717) 909-5925
kvanlake@s-b-b.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice*